*In re* BURNHAM'S ESTATE.

BRACKETT'S ESTATE *v.* BURNHAM'S ESTATE.

1. HUSBAND AND WIFE—ESTATES OF DECEDENTS—CLAIMS BY WIFE —EVIDENCE—INSTRUCTIONS.

In an action by a husband as executor of his wife's estate on a claim against an estate for board, room, etc., furnished decedent, an instruction that it was the claim of plaintiff that plaintiff's wife was the owner of the claim by reason of an arrangement made between them, that the only evidence thereof was the evidence of the husband that he said to his wife that "whatever she earned was hers," and that such words could not be extended beyond what she earned, which might include washing, ironing and mending, but not board and lodging if the evidence showed that the husband as head of the family supplied them, and as there was no evidence showing what the wife earned, she could not recover, was improperly refused.[1]

2. EXECUTORS AND ADMINISTRATORS—DISALLOWANCE OF CLAIMS— APPEALS.

An appeal from the decision of the commissioners of claims in the probate court disallowing a claim to the circuit court is in time where the report of commissioners is filed with the probate court March 16th and a claim for appeal is filed April 5th in the probate court.

3. HUSBAND AND WIFE—ESTATES OF DECEDENTS—CLAIMS BY WIFE —ESTOPPEL.

A wife is not estopped from presenting a claim for her own services and earnings against an estate by the fact that she assists her husband in making out his claim against the estate for board, room, repair of clothing, etc., which is not presented to the commissioners.

Error to Kalamazoo; Weimer, J. Submitted October 16, 1917. (Docket No. 140.) Decided December 27, 1917.

[1]As to right of married woman to maintain action for board or lodging of, or services rendered to, a third person living in the home, see note in 46 L. R. A. (N. S.) 665.

Anna C. Brackett presented a claim against the estate of Chauncey Burnham, deceased, for services rendered. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. On the death of claimant, the appeal was prosecuted in the name of William A. Brackett, executor. Judgment for claimant, defendant brings error. Reversed.

*Lincoln H. Titus,* for appellant.

*Alfred S. Frost* and *Corwin & Norcross,* for appellee.

STONE, J. This case involves a claim made by Anna C. Brackett, wife of William A. Brackett of the village of East Grand Rapids, against the estate of Chauncey Burnham, deceased, for board, room, laundry, repairing clothing, etc., furnished for said Chauncey Burnham, who was an uncle of William A. Brackett. Chauncey Burnham died intestate on January 12, 1915, at the home of a distant relative in the county of Kalamazoo, and his estate is being administered in the probate court of that county.

At first a claim against said estate was made out by William A. Brackett and sent to the administrator, aggregating $1,525, as follows:

> Board and room from March 29, 1907, to March
> 22, 1908, 34 weeks, at $4 per week..........  $136
> Board and room from March 22, 1908, to November
> 21, 1914, making 347 weeks, at $4 per week.... 1,388
> August 30, 1911, repairing watch................  1

This account was made out in the handwriting of Anna C. Brackett, in the name of her husband, and duly sworn to by the latter. It also appeared that this claim was never presented to the commissioners on claims in said estate.

In July, 1915, Anna C. Brackett filed a claim in her own individual right and name against the said estate, with the commissioners on claims, as follows:

To board, room, repairing  clothing, etc., from
   March  29,  1906,  to  November  21,  1914,  7
   years, 7 months, 22 days, at $5 per week.... $1,975 84
To cash paid for repairing watch............        1 50
                                                      $1,977 34

Upon the hearing this claim was disallowed by the commissioners on claims. The report of the commissioners was filed with the probate court on March 16, 1916. Thereupon, on the 5th day of April, 1916, Anna C. Brackett filed a claim for appeal with the probate court of said county from the decision of the commissioners on claims to the circuit court for said county.

On the 16th day of November, 1916, Anna C. Brackett departed this life testate, leaving her husband, said William A. Brackett, sole legatee of her estate. Her last will and testament was duly probated in the probate court for the county of Kent, and the said William A. Brackett was made executor. The death of Anna C. Brackett having been suggested of record, an order was entered by the court ordering the case to proceed in the name of the executor, who was allowed to prosecute the appeal. The case was tried by a jury, and a recovery had for the claimant amounting to $1,727.65. The defendant estate brings the case to this court by writ of error, claiming that certain errors were committed by the court at the trial.

Upon the trial of the case in the court below, said William A. Brackett was sworn as a witness in his own behalf. Upon his direct examination the following question was asked:

"*Q*. I understand from the testimony of the other witnesses here that Chauncey came to your place some time in 1907, and remained there for a number of years. Did you have any conversation with your wife in the presence of Mr. Burnham with regard to his remaining at your house?
"*A*. I did.

"*Defendant's Counsel:* Just a moment. I object to that for the reason that they are now attempting to prove an assignment.

"*Claimant's Counsel:* That is not the object at all."

A colloquy here occurred between court and counsel, whereupon a new question was asked upon the announcement of counsel for claimant that all he wanted to get was just the conversation between the witness and his wife. Whereupon the following occurred:

"Q. Did you ever have any conversation with your wife?

"A. I did.

"Q. In the presence of Mr. Burnham with regard to Mr. Burnham's living at your house?

"*Defendant's Counsel:* Objected to as being incompetent and immaterial.

"A. I did.

"*The Court:* Wait a moment. On what ground?

"*Defendant's Counsel:* They are trying to prove indirectly what they cannot directly. Mrs. Brackett is dead. She could not testify to that if she had been living, could she?

"*Claimant's Counsel:* What difference would it make about her being dead as to the question whether he had any conversation with her while she was living?

\*    \*    \*

"*Defendant's Counsel:* That would be no more than an assignment of his interest in the claim.

"*Claimant's Counsel:* It is not an assignment of an interest. He never had any claim.

"*The Court:* It is their theory that there was no assignment because there was nothing to assign. It was hers in the beginning.

"*Defendant's Counsel:* If he made this arrangement with his wife, he made an assignment of whatever claim he had. I object to it for the reason that there is no allegation in the claim filed in the probate court that she claims in any other capacity except her individual capacity, which she must do if she is the assignee. The Supreme Court has said 'the husband is the head of the house.' That is a matter of fact.

"*The Court:* That is what he is trying to show with

reference to this transaction. The husband was the head of the house, but he delegated his authority as the head of the house to his wife in the beginning.

"*Defendant's Counsel:* Then he made an assignment of whatever he put into that place to her. If he furnished the material for the house to her, he must have assigned any right to her that he might have in the claim whether it had been contracted or not.

"*The Court:* It is not a question of who owned the house, but of her rights as a married woman. It seems to me that is rather a waiver of his marital rights. It seems to me it is not an assignment. It seems to me it is a waiver that he would be estopped now perhaps to assign the right to his wife as husband. You may take it.

"*Claimant's Counsel:* You may state what the talk was between yourself and wife with regard to Mr. Burnham boarding there.

"*A.* I spoke to her about it, not in his presence, that if she wanted to take him she could take him, and whatever she earned was hers.

"*Defendant's Counsel:* I move to have this answer stricken out as incompetent and immaterial in proving the claim here against the estate.

"*The Court:* Motion denied."

It further appeared that, during the time said Chauncey Burnham boarded at the Brackett home, William A. Brackett lived in his own home and was a grocer, and furnished the house with supplies from his grocery.

Among others, defendant's counsel presented the following request to charge, which was refused:

"It is the claim of the plaintiff here that the wife of William A. Brackett, Anna C. Brackett, is the owner of this claim by reason of the arrangement made between them, but the only evidence upon this proposition is found in the testimony given by William A. Brackett in which he claims to have said to his wife 'whatever she earned was hers.' I charge you that this language cannot be extended beyond what she 'earned,' which might include washing, ironing, and mending, if you find any such services were

performed by Anna C. Brackett; but it cannot be extended to mean board and lodging, if the evidence shows the head of the family, William A. Brackett, her husband, supplied these. There is no evidence showing what the claimant, Anna C. Brackett, earned, and she is not entitled to recover in this action, and your verdict must be no cause of action."

A careful reading of this record satisfies us that this case was tried and submitted to the jury upon a wrong theory. It is clear to us that the above-quoted testimony of William A. Brackett only related to the personal earnings of the wife, Anna C. Brackett, and the recovery should have been limited to such personal services of the wife. There was no evidence in the case of the value of those services, independently and separately from the value of the board and room. It is true that Brackett testified that the conversation was not in the presence of Burnham, and therefore not equally within his knowledge. But it related only to her earnings, and did not relate to board and room. The language of this court in *Stackable* v. *Stackable's Estate*, 65 Mich. 515, at page 518 (32 N. W. 808, at page 810), is appropriate here:

"It is clear that, without some assignment, this claim for board would belong to the husband and not to the wife. He was the head of the household, and furnishing the family supplies. There had to be some agreement on his part with his wife that she should receive the pay for the board."

This court has spoken so often on this subject that there ought to be no difficulty in understanding the rule which we have laid down. A reference to the following cases is sufficient to show what has been decided: *Stackable* v. *Stackable's Estate, supra; Slack* v. *Norton*, 111 Mich. 213 (69 N. W. 497) ; *Ashley* v. *Smith's Estate*, 152 Mich. 197 (115 N. W. 1052) ; *In re Van Dyke's Estate*, 171 Mich. 195 (137 N. W. 79) ; *In re De Spelder's Estate*, 181 Mich. 153 (147 N. W.

589) ; *Maynard* v. *Schrumpf's Estate,* 192 Mich. 494 (158 N. W. 845) ; *Eaton* v. *Mudge,* 197 Mich. 604 (164 N. W. 463).

We think the case should have been submitted to the jury upon the claim of Anna C. Brackett for her own services only. We find in the record no evidence of any right in her or her estate to recover for board and room. These items belonged to the husband, and there is no testimony in this record that he ever permitted her to claim for more than for her services, or "whatever she earned," contained in the expression that, "If she wanted to take him, she could take him and whatever she earned was hers."

It will be noticed that in *Slack* v. *Norton, supra,* this court, at page 216 of 111 Mich., at page 498 of 69 N. W., said:

"In the present case, the wife was permitted by her husband to keep boarders, furnished the provisions herself, and with which it is apparent the husband had nothing to do."

There was no such evidence in the instant case. Here, she was to have whatever she earned.

In *Eaton* v. *Mudge, supra,* Justice BIRD clearly pointed out the distinction to be made between the personal earnings of the wife, and board, the latter of which, in the absence of an assignment, belongs to the husband.

There are numerous other assignments of error, all of which have had attention, but none of which, in our opinion, presents any matter of reversible error.

It is true that evidence of the value of the board should have been excluded, for the reason that the item did not belong to the claimant; but that question is disposed of in what we have already said.

We think that the appeal was taken in time; and that the wife was not, as matter of law, estopped from presenting her claim for services and earnings, be-

cause she assisted the husband in making out his claim. The request to charge, above quoted, should have been given, and error was assigned on the refusal. It was not given in substance, even, but the charge was inconsistent with such request.

For the errors pointed out, the judgment of the court below is reversed, with costs to appellant, and a new trial is granted.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.